UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| BRANDON L. TAYLOR, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | Cause No. 3:10-CV-174 RM |
| | ) | (arising out of 3:07-CR-111(02) RM) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent | ) | |

OPINION AND ORDER

Brandon Taylor has filed a *pro se* motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct sentence [Doc. No. 88], a motion to proceed *in forma pauperis* [Doc. No. 89], and a motion for appointment of counsel [Doc. No. 90]. A jury convicted Mr. Taylor on four counts of violations of 18 U.S.C. § 922(g). This court sentenced Mr. Taylor to 240 months' imprisonment (half the statutory maximum 480 months and five months above the top end of the U.S.S.G. recommended range). The court of appeals affirmed Mr. Taylor's sentence. United States v. Taylor, 341 Fed. Appx. 872 (7th Cir. 2009). Mr. Taylor now claims his four counts of conviction under 18 U.S.C. § 922(g) are multiplicitous in violation of the Fifth Amendment's Double Jeopardy clause. Mr. Taylor also claims ineffective assistance of counsel because his trial counsel didn't follow his instructions to object to certain lines of questioning by the government and to cross-examine witnesses, particularly his partners in crime, with certain questions.

The court decides Mr. Taylor's petition without a hearing. No evidentiary hearing is required if "the motion and files and records of the case conclusively show that the petitioner is entitled to no relief." 28 U.S.C. § 2255. Based on the court's review of the parties' filings and the record of this case, the court concludes that the factual and legal issues raised by Mr. Taylor may be resolved on the record, so no hearing is necessary. *See* Menzer v. United States, 200 F.3d 1000, 1006 (7th Cir. 2000).

The court can appoint counsel for a financially eligible person seeking relief under 28 U.S.C. § 2255 if the "interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). Mr. Taylor's sophisticated (though misplaced) arguments, including his list of authorities on the multiplicity issue, confirm that Mr. Taylor is fully capable of articulating his arguments. Rule 8(c) of the Governing Rules of Section 2255 Proceedings requires appointment of counsel if an evidentiary hearing is held, but no hearing is needed to decide Mr. Taylor's petition. Because the absence of counsel won't result in an unfair proceeding in violation of Mr. Taylor's due process rights, the court denies his motion for appointment of counsel. Mr. Taylor's motion to proceed *in forma pauperis* is denied as unnecessary. For the reasons stated below, the court denies Mr. Taylor's § 2255 petition.

I. BACKGROUND

On July 30, 2007, Brandon Taylor, his co-defendant Ernest Glasper, and two young brothers, David and Wesley "Marquis" Dooley, were driving around in a gold Nissan Maxima belonging to Mr. Taylor's girlfriend. They stopped and carjacked Dion Winston at gunpoint. Mr. Winston testified that both Mr. Taylor and Mr. Glasper pointed guns at the back of his head and either Mr. Glasper or Mr. Taylor struck him on the head with a gun,[1] knocking him to the ground. Mr. Glasper offered contradictory testimony about the carjacking. He said he didn't see Mr. Taylor with a gun. The government confronted Mr. Glasper about statements Mr. Glasper made in his plea agreement claiming that both he and Mr. Taylor each had a gun when they carjacked Mr. Winston.[2] Trial Tr., at 140-141, 165 [Doc. No. 70]. Mr. Glasper eventually stated he and Mr. Taylor both put guns to Mr. Winston's head. Tr. at 143. But then, Mr. Glasper said again that he didn't see Mr. Taylor with a gun at the carjacking. Tr. at 145. After the trial's first day, the government moved to dismiss the two counts against Mr. Taylor relating to the carjacking, likely thanks in part to the intervention of Mr. Taylor's attorney, Brian May.[3]

---

[1] Mr. Glasper later testified he was the one who struck Mr. Glasper with the gun, but his credibility was highly doubtful.

[2] The court instructed the jury on the impeachment use of prior inconsistent statements. *See* Court's Final Jury Instruction No. 18, Jan. 16, 2008 [Doc. No. 39].

[3] Though the government dismissed these two counts, the court found at sentencing by a preponderance of the evidence that Mr. Taylor carjacked Mr. Winston at gunpoint, and took this into account when calculating what term the Sentencing Guidelines recommended for Mr. Taylor. *See* Sent. Memo., May 15, 2008 [Doc. No. 63]; *see also* United States v. Taylor, 314 Fed. Appx. 872 (7th Cir. 2009) (affirming Guidelines calculation).

The four men—Mr. Taylor, Mr. Glasper, and the Dooleys—drove the gold Nissan and the stolen Oldsmobile, and then exchanged them for a green car. About an hour after the carjacking, while driving the green car, the four men were involved in a shootout with other men. The Dooley brothers were in the back and Mr. Taylor and Mr. Glasper fired two guns, a .45 caliber Taurus and a .380 caliber Tanfoglio. David Dooley testified that Mr. Glasper fired the .380 and Mr. Taylor fired the .45. Tr. at 231, 236. Ballistics analysis confirmed that casings found at the scene were from bullets fired from these two guns. Tr. at 247-249.

After the shootout, the group went to Wal-Mart in the gold Nissan and bought .45 caliber ammunition. Mr. Glasper and Mr. Taylor went up to the counter together to make the purchase. The men saw a police officer at the store and, after waiting for the officer to round a corner in the store, left the store to get into the Nissan and drive away. The officer recognized Mr. Taylor as a suspect in the shootout that had occurred earlier that day.

The officer left the store, got into his squad car, caught up to the Nissan, and pulled the men over. As the officer got out of his car, the four men took off and a police chase followed. Though the car belonged to Mr. Taylor's girlfriend and Mr. Taylor drove it most of the day, Mr. Glasper was driving the car during the chase and the Dooley brothers were still in the back seat—Mr. Taylor was in the right front passenger seat. Tr. at 176, 218. The chase endangered people on the road and destroyed property. One driver, Therese Bauters, stopped her car when the fleeing Nissan almost hit her car. She saw the right front passenger toss a bag

4

from the window. Ms. Bauters called the police, and when the bag was recovered the police discovered with it the .45 caliber Taurus and .380 caliber Tangfolgio, as well as the box of .45 caliber ammunition purchased at Wal-Mart, minus seven rounds that had been loaded into the .45. The four men crashed the Maxima into a yard and took off on foot and were soon apprehended by the police.

Mr. Winston, Mr. Glasper, and Mr. David Dooley-Jones were all called by the government to testify at trial. Their testimony was self-contradictory at places. Each of the men was called out by the government for telling the government one thing before testifying, and then saying something different at trial. Testimony established that the men's demeanor was calm when talking to the government but that they became nervous and agitated when actually testifying in Mr. Taylor's presence. Despite their apparent attempts to change their stories, they eventually admitted that what they told the government before trial was true.

Mr. Taylor has had two court-appointed attorneys in his case. Brian May represented him before and during trial, and David Jones represented him at sentencing and on appeal. After a two-day trial, a jury convicted Mr. Taylor of two counts of possession of a firearm (one each under 18 U.S.C. § 922(g)(1) and § 922(g)(3)) and two counts of possession of ammunition (one each under 18 U.S.C. § 922(g)(1) and § 922(g)(3)). Mr. Taylor stipulated before trial to having been a convicted felon; evidence at trial established that he was a regular user of marijuana and Ecstasy pills and that he used marijuana and Ecstasy on July 30, 2007.

Mr. Taylor followed the day of July 30, 2007 with more unfortunate choices. After trial, Mr. Taylor punched a United States Marshal and a Sheriff's Deputy who were removing his handcuffs at the jail where he was being held. Mr. Taylor ended up injuring three guards. Mr. Taylor also threatened to kill a Sergeant whose role at his trial was to authenticate a photo of a line-up room. Mr. Taylor repeatedly threatened to kill—either personally or through hit-men—the five-person team assigned to move him between his jail and the court.

The court sentenced Mr. Taylor to the statutory maximum 120 months on each count, with the two felon in possession (18 U.S.C. § 922(g)(1)) counts to run concurrently and the two unlawful user of a controlled substance in possession (18 U.S.C. § 922(g)(3)) counts to run concurrently; both groupings of counts run consecutively to produce Mr. Taylor's 240 month sentence.

## II. ANALYSIS

A person convicted of a federal crime may attack his sentence on the ground that the sentence was imposed in violation of the Constitution or laws of the United States, that the court had no jurisdiction to impose such sentence, the sentence exceeded the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). Relief under § 2255 is reserved for extraordinary situations. Prewitt v. United States, 83 F.3d 812, 816 (7th Cir. 1996) (citing Brecht v. Abrahamson, 507 U.S. 619, 633-634 (1993)). A § 2255 petition can't substitute for an appeal or advance arguments that could have

been made earlier. See Reed v. Farley, 512 U.S. 339, 354 (1994) ("So far as convictions obtained in the federal courts are concerned, the general rule is that the writ of habeas corpus will not be allowed to do service for an appeal." (quoting Sunal v. Large, 332 U.S. 174, 178 (1947))); Fountain v. United States, 211 F.3d 429, 433 (7th Cir. 2000) ("It is well-established . . . that a § 2255 motion is not a substitute for direct appeal.").

"[A]n ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." Massaro v. United States, 538 U.S. 500, 504 (2003). To prevail on his claim of ineffective assistance of counsel, Mr. Taylor must show both (1) that his attorney's performance was objectively unreasonable in its deficiency such that he was denied the counsel guaranteed by the Sixth Amendment, and (2) that this deficient performance prejudiced his defense, rendering the outcome of the proceedings against him unreliable. Strickland v. Washington, 466 U.S. 668, 687 (1984); Jones v. Page, 76 F.3d 831, 840 (7th Cir. 1996). If Mr. Taylor can't make a showing on both prongs, his claim must be dismissed. Jones v. Page, 76 F.3d at 840.

On the first prong, judicial scrutiny of the attorney's performance must be "highly deferential" and the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

7

Jones v. Page, 76 F.3d at 840 (quoting Strickland v. Washington, 466 U.S. at 689). An attorney's duty isn't to raise every conceivable defense or obstruction, for a "lawyer has an obligation to be truthful and forthright with the court, [and] he has no duty to make a frivolous argument." Fuller v. United States, 398 F.3d 644, 652 (7th Cir. 2005) (quotation removed).

To show prejudice under the second prong, Mr. Taylor must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. at 694; Jones v. Page, 76 F.3d at 840.

*1. Multiplicity*

Mr. Taylor argues that his convictions on two gun counts and two ammunition counts are multiplicitous, in violation of the Fifth Amendment's Double Jeopardy clause. Mr. Taylor waived this argument because it wasn't raised before trial, and Mr. Taylor hasn't shown good cause for never raising this argument before. *See* FED. R. CRIM. P. 12(b)(3) & 12(e); United States v. Brisco, 896 F.2d 1476, 1522 (7th Cir. 1990) ("In this circuit a failure to raise a multiplicity claim constitutes a waiver."); *see also* Theodorou v. United States, 887 F.2d 1336, 1339 (7th Cir. 1989) ("We have made it clear, however, that a district court cannot reach the merits of an appealable issue in a section 2255 proceeding unless that issue has been raised in a procedurally appropriate manner. As we have reiterated, a petition under section 2255 will not be allowed to do service for an appeal." (quotations and citations omitted)).

Mr. Taylor tries to get around the waiver issue and demonstrate good cause by stating in his reply brief that he received ineffective assistance of counsel on the multiplicity issue. Impliedly, Mr. Taylor is shoe-horning in an argument that his appellate counsel also was ineffective for not raising the multiplicity claim. New claims can't be raised in a reply brief as a way of getting around the waiver issue. United States v. Elizalde-Adame, 262 F.3d 637, 640 (7th Cir. 2001); United States v. Herrera-Rivera, 25 F.3d 491, 495 n.3 (7th Cir. 1994); *see also* White v. United States, 23 Fed. Appx. 570, 572 (7th Cir. 2001) (unpublished decision) (stating arguments raised for first time in reply brief to § 2255 petition are deemed waived).

Mr. Taylor's multiplicity argument has no merit, so he can't show good cause for not raising this argument before trial or at any time until his § 2255 petition because he can't show ineffective assistance of counsel on this point. The evidence at trial was more than sufficient to show that Mr. Taylor both physically and constructively possessed both the .45 and the .380, as well the ammunition he fired from the .45 and the new ammunition that he and Mr. Glasper bought at Wal-Mart for the .45. Mr. Taylor's arguments suggest that he doesn't understand that he is still guilty of possession even if there might be some uncertainty about whether he physically handled the weapons and ammunition during some of the events; as long as he could control the object—such as tell someone else in the car what to do with it—he possessed it. The jury was properly instructed on what possession means. *See* Jury Instr. No. 14.

Mr. Taylor tries to get around the waiver issue and demonstrate good cause by stating in his reply brief that he received ineffective assistance of counsel on the multiplicity issue. Impliedly, Mr. Taylor is shoe-horning in an argument that his appellate counsel also was ineffective for not raising the multiplicity claim. New claims can't be raised in a reply brief as a way of getting around the waiver issue. United States v. Elizalde-Adame, 262 F.3d 637, 640 (7th Cir. 2001); United States v. Herrera-Rivera, 25 F.3d 491, 495 n.3 (7th Cir. 1994); *see also* White v. United States, 23 Fed. Appx. 570, 572 (7th Cir. 2001) (unpublished decision) (stating arguments raised for first time in reply brief to § 2255 petition are deemed waived).

Mr. Taylor's multiplicity argument has no merit, so he can't show good cause for not raising this argument before trial or at any time until his § 2255 petition because he can't show ineffective assistance of counsel on this point. The evidence at trial was more than sufficient to show that Mr. Taylor both physically and constructively possessed both the .45 and the .380, as well the ammunition he fired from the .45 and the new ammunition that he and Mr. Glasper bought at Wal-Mart for the .45. Mr. Taylor's arguments suggest that he doesn't understand that he is still guilty of possession even if there might be some uncertainty about whether he physically handled the weapons and ammunition during some of the events; as long as he could control the object—such as tell someone else in the car what to do with it—he possessed it. The jury was properly instructed on what possession means. *See* Jury Instr. No. 14.

Multiplicity "is the charging of a single offense in separate counts of an indictment," in violation of the Fifth Amendment's Double Jeopardy clause. United States v. Starks, 472 F.3d 466, 468-469 (7th Cir. 2006); United States v. Conley, 291 F.3d 464, 469 n.4 (7th Cir. 2002). To decide whether an indictment is multiplicitous, courts ask whether each count requires proof of a fact which the other does not. United States v. Starks, 472 F.3d at 469; United States v. Conley, 291 F.3d at 470. The "cardinal rule" for reading multi-count indictments is that each count must stand on its own two feet. Id. at 471.

Courts across the nation agree that Congress intended the allowable unit of prosecution under § 922(g) to be an incident of possession regardless of whether a defendant satisfies more than one 922(g) classification, possessed more than one firearm, or possessed a firearm and ammunition. United States v. Richardson, 439 F.3d 421, 422-423 (8th Cir. 2006) (gathering cases). But Congress also intended that multiple convictions may be obtained for possessing the same firearm or ammunition in multiple courses of conduct. *See* United States v. Conley, 291 F.3d 464, 470 (7th Cir. 2002).

Mr. Taylor's case involved two loaded guns possessed during multiple courses of conduct, a gun fired during one of the courses of conduct, and ammunition separately purchased and disposed of during these multiple courses of conduct. The math and facts of this case defy simple precedent. Mr. Taylor constructively, if not physically, possessed the .380 for most of the day. Mr. Taylor possessed and fired the .45. Mr. Taylor physically possessed the ammunition he

10

fired from the .45. Mr. Taylor constructively, if not physically, possessed the new ammunition for the .45 that he and Mr. Glasper bought from Wal-Mart, some of which was then loaded into the .45. Mr. Taylor physically possessed the guns and ammunition when he threw them from the Nissan.

Mr. Taylor's possessions of these firearms and ammunition weren't simultaneous and undifferentiated. *See* United States v. Conley, 291 F.3d at 470 (holding that conviction on two counts of possession of same gun wasn't multiplicitous because defendant didn't possess the gun during a period of time in between the times of possession alleged in the indictment). Albeit all in the same day, Mr. Taylor engaged in the following non-simultaneous and differentiated courses of conduct: (1) carjacking a man at gunpoint; (2) engaging in a shootout in which one or more people could have been seriously harmed or killed; (3) illegally purchasing ammunition at Wal-Mart; and (4) physically possessing and throwing the guns and ammunition out of a car while fleeing from police in a dangerous car chase. This is distinct from a case where someone possesses two packages of drugs and distributes them to two different people: the possession of the two packages occurs in the same course of conduct. *See* United States v. Horton, 601 F.2d 319, 325 (7th Cir. 1979). This is distinct from a case in which someone engages in the single course of conduct of simply possessing two loaded guns during a period of time ranging anywhere from a few seconds to a few years.

Mr. Taylor's multiplicity argument was waived, his ineffective assistance of counsel claim regarding his multiplicity argument wasn't properly raised, and the indictment and conviction aren't multiplicitous. Mr. Taylor's § 2255 petition is denied on this point.

*2. Failure to Object and Effectively Cross Examine*

Mr. Taylor argues that he told his lawyer to object to leading questions from the government during trial and told his lawyer to cross examine witnesses in certain ways, but that his lawyer didn't do so. Mr. Taylor says this prejudiced him because Mr. Glasper and Mr. Dooley testified that he didn't have any gun.

Mr. Taylor hasn't shown—nor can he show—that his attorney's performance prejudiced him in any way. Mr. May's performance was reasonable, professional, and as well done as could be expected under the circumstances of this case's facts.

Mr. May objected to the government's leading questions at one point, but the court overruled the objection because the government could ask leading questions on direct to lay its foundation for calling into question the credibility of the witness' trial testimony. *See* Tr. at 224. More objections would have been futile, and effective assistance of counsel doesn't require raising futile objections that might anger the jury. Further, Mr. Glasper and Mr. Dooley were hostile witnesses called by the government who lied at one point or another to the government, so leading questions were permissible. FED. R. EVID. 611(c). Finally,

Mr. May conducted effective cross-examinations, and effective assistance of counsel allows an attorney to limit his cross-examinations so as to avoid witnesses saying more damaging things about his client.

An attorney isn't required to disregard his own professional training and experience just because his client demands he ask certain questions or make certain objections. The "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Jones v. Page, 76 F.3d at 840 (quoting Strickland v. Washington, 466 U.S. at 689). An attorney's duty isn't to raise every conceivable defense or obstruction, for a "lawyer has an obligation to be truthful and forthright with the court, [and] he has no duty to make a frivolous argument." Fuller v. United States, 398 F.3d 644, 652 (7th Cir. 2005) (quotation removed).

Making the best of a bad case, Mr. May made the only legitimate closing argument available to his client under this case's circumstances, which was to question the credibility of Mr. Winston, Mr. Glasper and Mr. Dooley, whose testimony placed the guns and ammunition physically in Mr. Taylor's hands. They said one thing before trial (in Mr. Glasper's case, in a plea colloquy made under oath) and said something else at trial. At trial, they eventually admitted their earlier statements placing guns and ammunition physically in Mr. Taylor's hands were true. The best one could do was to ask the jury not to believe these men, and

that's what Mr. May did. But it would take much more than effective assistance of counsel to get a jury to unanimously declare a man not guilty when he controlled the car and helped lead the string of crimes committed in this case such that he at minimum constructively possessed the guns and ammunition for which he was charged during four different courses of conduct. The law doesn't require attorneys to pull rabbits out of hats. Mr. May's performance was reasonable and didn't prejudice Mr. Taylor in any way.

### III. Conclusion

For the reasons stated, Mr. Taylor's § 2255 petition is DENIED [Doc. No. 88] and his motion to appoint counsel is DENIED [Doc. No. 90]. Mr. Taylor's motion to proceed *in forma pauperis* before this court is DENIED as unnecessary [Doc. No. 89].

SO ORDERED.

ENTERED:  January 19, 2011

/s/ Robert L. Miller, Jr.
Judge
United States District Court

cc:  B. Taylor
AUSA Schmid